The opinion of the court was delivered by
Bermudez, C. J.
The object of this suit is to compel, by mandamus, the defendant company, in specific performance of alleged contracts, to pht and keep in proper condition the streets, etc., through which its tracks pass within city limits.
In its return the company substantially pleaded that the allegations of the petition are too vague, general and indefinite; that the action is premature; that no proper demand was made to authorize the suit; that the act (No. 133 of 1888) under which the action is brought is unconstitutional for several reasons, one of which is, that it impairs the obligations of the contracts between the parties; that the charges preferred are unfounded; that it has always complied with all its obligations and continues to do so, etc.
From a judgment, overruling the preliminary defence and making the mandamus peremptory, for specified purposes, the company appeals.
In relation to the exceptions, it suffices to say, that the petition clearly discloses a valid cause of action; that there was a proper demand for compliance; that the writ itself is a putting in default, if any was necessary; that the statute attacked is not special or local, but general and remedial only; that it divests no vested rights, and impairs the obligation of no contract. It has already been evoked, and twice enforced. State ex rel. New Orleans vs. New Orleans and N. E. R. R. Co., 42 An. —.
So that the contention is reduced to an interpretation of the direct and assumed contracts, between the parties.
Under the terms of the contracts whereby the right of way was granted, the substantial obligation, assumed by the purchaser, and which is of moment in this controversy is, that the company would *555 keep in good order and condition, from curb to curb, the streets and bridges through which the tracks pass.
The contention is not, whether the company is or not bound to-keep in such condition the streets, etc., on which its tracks pass, but rather, whether the company is or not under such obligations, as to streets, etc., on which its tracks do not pass, and which border on the sides of the middle or neutral ground, which separate them and on which its tracks are laid; such as the streets alongside the strip-of ground between them, on Oanal, Rampart and Esplanade streets in this city.
The theory on which this action is predicated rests on the assumption that the neutral or middle ground forms part of the street, and that the track of the company having been laid on it, they passthro ug the street itself; but the theory at once explodes when it is considered that the strip of ground does not form part of the street proper.
A street is a space dedicated to public use, for the passage and circulation thereon of ordinary driven vehicles, or animals, in cities or towns.
Such was surely the meaning attached to the word, before the time, when street cars were permitted to be run on the streets and such it must have been, in the contemplation of the parties, when they entered into the contracts propounded upon.
Indeed, the neutral or middle ground is not only not used, but is prohibited from being used, as a street, and, not being used thus, it can not be treated practically as a part of the streets, between which it extends. See Act 73 of 1876; 13 An. 320; 26 An. 362; 35 An. 1067; 36 An. 547; 41 An. —.
The evidence shows that, in the exercise of the right of way purchased, the company did not lay its tracks on the side streets themselves, but on the space dividing them, which does not form part of them, as a thoroughfare for the passage and circulation of ordinary carriages and vehicles.
It also establishes that the city has never opposed such use of such ground, and has never called on the company to do any work on such double streets; but that such work has always'been attended to by the^city at its own expense.
The terms employed are clear and free from doubt. Were they obscure or equivocal, the want of necessary explanation on the part- *556 ■of the obligee, who imposed the conditions which were accepted, should not render the burden more onerous; but the contention most favorable to the obligor should be adopted; the more so, when the mode of execution justifies this course. R. O. O. 1956, 1958; O. N. 1162.
A careful reading of the stipulation, coupled with the consideration of the interpretation placed upon it by the parties, forces the irresistible conclusion that the space, which in their intent, the company was to keep in good order and condition, is the route through and on which its tracks would pass, extending from curb to curb, or external boundary. No other reasonable signification can be placed on the agreement.
It is therefore apparent that the company is not bound, under its tenor, to perform any work beyond the curbs or lines within which are comprised the neutral or middle grounds, or strips of land, between the side streets on which its tracks have been laid.
The proof shows in what respects the company has been derelict as to ordinary streets, and to some extent as to intersections, bridges and neutral grounds which constitute the route through and on which its tracks pass.
The judgment of the lower court is correct, unless in that portion which makes the mandamus peremptory as to the streets or thoroughfares which extend on the sides and beyond the curbs of the strips of ground in question.
It is therefore ordered and decreed that the judgment appealed from he amended by striking therefrom that portion which imposes on the defendant company the obligation of keeping in good order and condition the sireets or roadways on the sides of the middle or neutral grounds on Canal, Rampart and Esplanade streets in this city, and by rejecting the demand in that respect, and that thus amended said judgment be affirmed at appellee’s cost.